UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TANYA S.,

                        Plaintiff,

v.                                                                                                1:20-CV-0972
                                                                                                  (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>MELISSA KUBIAK, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | JASON PECK, ESQ.<br>JASHUA KERSHNER, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 13.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.      RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1977. (T. 61.) She completed high school. (T. 178.) Generally, Plaintiff's alleged disability consists of back injury and chronic pain. (T. 63.) Her alleged disability onset date is April 26, 2014. (T. 61.) Her date last insured is December 31, 2020. (*Id.*) Her past relevant work consists of commercial cleaner. (T. 178, 198.)

### B. Procedural History

On February 15, 2017, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 61.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 13, 2019, Plaintiff appeared before the ALJ, Benjamin Chaykin. (T. 33-60.) On April 17, 2019, ALJ Chaykin issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-25.) On May 27, 2020, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-20.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2021 and Plaintiff had not engaged in substantial gainful activity since April 26, 2014. (T. 12.) Second, the ALJ found Plaintiff had the severe impairments of: spine disorder and obesity. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments

located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 14.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform: sedentary work as defined in 20 C.F.R. § 404.1567(a); except, Plaintiff can occasionally climb ropes, scaffolds, and ladders; occasionally climb ramps or stairs; occasionally stoop, crouch, balance, kneel, crawl; and occasionally push and pull with the right lower extremity. (T. 15.)[1] Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 18-20.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly evaluate the medical evidence against Listing 1.04(A). (Dkt. No. 9 at 15-19.) Second, and lastly, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's mental impairments throughout the remainder of the sequential process after finding the impairments non-severe at step two. (*Id*. at 19-24.) Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 12.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the record supported the ALJ's administrative finding of fact that Plaintiff was not disabled

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

pursuant to Listing 1.04(A).  (Dkt. No. 11 at 5-10.)  Second, and lastly, Defendant argues the record supports the ALJ's finding Plaintiff's mental impairments were not severe.  (*Id*. at 10-17.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.    ANALYSIS**

   **A.    Listing 1.04(A)**

Plaintiff argues the ALJ in concluding Plaintiff's spinal impairment did not meet Listing 1.04(A) because the ALJ failed to accurately review the medical record against the Listing.  (Dkt. No. 9 at 17.)  Plaintiff argues all of the criteria of the Listing are met and the ALJ was "obligated to perform a thorough analysis of the Listing itself and provide a thorough explanation for why Plaintiff did not meet it."  (*Id*. at 18.)  For the reasons outlined below, the ALJ properly evaluated Plaintiff's spinal impairment at step three and the ALJ's reasoning is supported by substantial evidence in the record.

In general, if an ALJ determines a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii)(d)[2].  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* § 404.1525(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* § 404.1520(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530,

---

[2]    Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier Regulations and SSRs.

110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1).  It is plaintiff's burden to "demonstrate that [her] disability [meets] all of the specified medical criteria of [a Listing]."  *Otts v. Comm'r of Soc. Sec.,* 249 F. App'x. 887, 888 (2d Cir. 2007) (internal citations omitted).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan,* 493 U.S. at 530.

Listing § 1.04(A) for disorders of the spine, defined in relevant part as:

> 1.04 Disorders of the Spine (e.g., ... spinal arachnoiditis, spinal stenosis, ... degenerative disc disease ...) resulting in compromise of a nerve root (including the cauda equina) or spinal cord. With: (1) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine) ...

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A)[3].

The ALJ concluded the evidence did not satisfy the criteria of Listing 1.04 because the record was "devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation."  (T. 14.)[4]  Although the ALJ did not provide a more detailed analysis at step three, the ALJ did not commit reversible error because the ALJ supports his determination elsewhere in his opinion. *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) ("[A]bsence of an express rationale does not prevent us from upholding the ALJ's determination

---

[3]  Effective April 1, 2021 the criteria of Musculoskeletal Listings changed.  *See* POMS DI 34121.013 Musculoskeletal Listings from 09/29/16 to 04/01/21.  Plaintiff's 2017 application and 2019 hearing were prior to the changes.

[4]  The inability to ambulate effectively is a criteria of Listing 1.04(C). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(C) ("Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00 B2b.").  Plaintiff does not assert she meets or equals Listing 1.04(C)

regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence."); see Solis v. Berryhill, 692 F. App'x. 46, 48-49 (2d Cir. 2017) (ALJ's failure to discuss specific Listing was not remandable error where his "general conclusion" that plaintiff did not meet a Listing was supported by substantial evidence).

Substantial evidence supports the ALJ's determination Plaintiff did not meet or equal Listing 1.04(A).  Listing 1.04(A) requires an individual have a "disorder of the spine ... resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." See 20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04(A). There is no evidence of such an abnormality in this case. See Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 76 (2d Cir. 2012) (emphasizing that Listing 1.04 requires "evidence of nerve root compression"); see Claymore v. Astrue, 519 F. App'x 36, 37 (2d Cir. 2013) (Plaintiff failed to show his impairments met Listing 1.04 because MRI showed no significant nerve involvement and no central spinal stenosis).  Plaintiff's MRI results did not show evidence of nerve root compression as required under Listing 1.04(A).  (T. 435, 473, 547, 552, 557.)  However, even if the MRI results did exhibit nerve root compression, the evidence does not show that Plaintiff also suffered from the additional conditions under Listing 1.04(A).  Although the medical evidence shows Plaintiff suffered from pain and tenderness upon palpation of the lumbar area and diminished range of motion, sensory exams and straight leg tests were largely normal.

Although the ALJ did not specifically cite evidence to support his step three determination at step three, the ALJ summarized the evidence in his overall analysis which supported his step three determination.  In July 2014, Lindsey Clark, M.D.,

observed Plaintiff walked with a smooth gait, she had tenderness to palpation and decreased range of motion of the lumbar spine. (T. 546.) Dr. Clark observed Plaintiff's strength was intact, sensation was intact, and she had negative straight leg raises bilaterally. (*Id*.) As noted by the ALJ, in June 2017, Dr. Clark observed Plaintiff walked with a smooth and reciprocal gait. (T. 17, 552.) Dr. Clark observed Plaintiff had decreased range of motion in her lumbar spine, her strength was intact, and straight leg raises were negative bilaterally. (*Id*.) She observed Plaintiff's sensation to light touch was intact. (*Id*.) In September 2015, Gregory Castiglia, M.D., reviewed an "updated MRI scan," and examined Plaintiff. (T. 434-435.) Dr. Castiglia observed on examination Plaintiff had tenderness to palpation of the lumbar spine and she ambulated independently though favored the right side. (T. 435.) In January 2017, Dr. Castiglia observed on examination Plaintiff had positive leg raise on the right with a negative passive range of motion bilaterally. (T. 473.) He observed she walked with an antalgic gait. (*Id*.) Dr. Castiglia noted on examination Plaintiff's "left leg is intact at 5/5, right is approximately 4/5 with guarding and decreased effort." (*Id*.) At a consultative examination in May 2017, John Schwab, D.O. observed Plaintiff "dragged her right leg slightly when she walked." (T. 494.) Dr. Schwab observed Plaintiff's lumbar spine showed full range of motion; straight leg raise on the right was 30 degrees, left was "full" and with straight leg raise sitting right and left were "full." (T. 495.) Plaintiff had decreased sensation to light touch in the right lower extremity and full strength. (*Id*.)

  Plaintiff did not meet her burden of establishing that her medical impairments met or medically equaled the requirements of a listed impairment, and her challenge to the ALJ's analysis fails. Overall, the evidence in the record did not establish Plaintiff met

the requirements of Listing 1.04(A), and the ALJ's conclusion that Plaintiff's impairments did not meet or equal the severity of a listed impairment was fully supported by the record.

### B. Mental Impairments

Plaintiff argues the ALJ failed to address her non-severe mental impairments in formulating her RFC determination. (Dkt. No. 9 at 19-24.) For the reasons outlined below, Plaintiff's argument fails.

As a general matter, at step two of the sequential analysis, the ALJ is required to determine whether an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months limits a plaintiff's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1509. The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *Id*. §§ 404.1522(b). Therefore, a non-severe impairment does not impede the ability to perform the basic demands of work; however, in formulating an RFC determination, the ALJ must consider both severe and non-severe impairments.

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC determination must account for limitations imposed by both severe and non-severe impairments. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012); 20 C.F.R. § 404.1545(a)(2) ("We will

consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' ... when we assess your [RFC]...."). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c).

In his step two determination, the ALJ concluded Plaintiff had mild limitations in the four areas of mental functioning. (T. 13); *see* 20 C.F.R. Part 404, Subpart P, App'x 1 (the four criteria represent the areas of mental functioning a person uses in a work setting, such as ability to: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself). Based on this analysis, the ALJ concluded Plaintiff's mental impairments were non-severe. (T. 13.)

Contrary to Plaintiff's argument, the ALJ specifically addressed evidence in the record pertaining to her mental functioning in his RFC analysis. In his step four analysis, the ALJ discussed the medical opinion evidence provided by non-examining State agency medical consultant, T. Bruni. (T. 17.) Dr. Bruni opined Plaintiff had no more than mild limitations in mental functioning, resulting in non-severe mental impairments. (T. 17, 67.) The ALJ also considered the medical opinion provided by examining consultative examiner, Janine Ippolito, Psy.D. (T. 18.) Dr. Ippolito opined Plaintiff was able to understand, remember, or apply simple directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public; sustain an ordinary routine and regular

attendance at work; maintain personal hygiene and appropriate attire; and demonstrate awareness of normal hazards and taking appropriate precautions with no evidence of limitations.  (T. 491.)  She further opined Plaintiff would have "mild limitations" in: understanding, remembering, or applying complex directions and instructions; sustaining concentration and performing at a task at a consistent pace.  (*Id*.)  The ALJ stated the RFC was supported, in part, by the opinions of Drs. Bruni and Ippolito.  (T. 18.)

Plaintiff argues the ALJ failed to address evidence in the record of positive findings on exam concerning Plaintiff's mental impairments and medication prescribed. (Dkt. No. 9 at 22.)  "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)); *Barringer v. Comm'r of Social Sec.,* 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005) (an ALJ's failure to cite specific evidence does not indicate that it was not considered).

Here, the ALJ assessed the medical and other objective evidence in the record and determined Plaintiff's mental impairments caused no more than "mild" limitations in all four functional areas.  *Dianne L. S. v. Comm'r of Soc. Sec.*, No. 19-CV-075, 2021 WL 1169180, at *4 (W.D.N.Y. Mar. 28, 2021).  The regulations provide that when the ALJ rates a plaintiff's mental limitation as "none" or "mild," the ALJ can find the plaintiff's impairment non-severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Dianne L.S.*, 2021 WL 1169180 at *4 (citing 20 C.F.R. § 404.1520a(d)(1)).  Indeed, courts have

concluded that even moderate limitations in mental functioning may not prevent a plaintiff from performing unskilled work.  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 F.App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).  At step four the ALJ concluded Plaintiff capable of performing unskilled work.  (T. 19.)  Although the RFC did not specifically limit Plaintiff to unskilled work, the ALJ ultimately determined, based on vocational expert testimony, there were a significant number of unskilled occupations in the national economy Plaintiff could perform.  (T. 19-20.)  Therefore, the ALJ properly considered Plaintiff's mental impairments at all steps of the sequential process.

The Court cannot set aside the Commissioner's disability determination unless it finds that the decision is based on either legal error or factual findings that are unsupported by substantial evidence.  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:    June 2, 2021

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge